UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JESSIE BRANTLEY,

        Petitioner,        Case Number: 02-10024-BC
                                             Honorable David M. Lawson

v.

KEN McKEE,

        Respondent,
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      The petitioner, Jessie Brantley, an inmate presently confined at the Carson City Correctional Facility in Carson City, Michigan, has filed *pro se* a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner challenges his 1998 convictions of first-degree premeditated murder, Mich. Comp. Laws § 750.3169(a), felonious assault, Mich. Comp. Laws § 750.82, and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b. He is serving prison terms of life imprisonment for murder, a one- to four-year term for felonious assault, and a consecutive two-year term for felony firearm. The petitioner raises claims of insufficient evidence, prosecutorial misconduct, and defective jury instructions. The respondent contends that the petitioner's stated grounds for relief are without merit or procedurally defaulted. The Court finds that none of the grounds alleged by the petitioner supports habeas relief under section 2254. Therefore, the petition will be denied.

I.

      The petitioner was tried by a jury in the Wayne County, Michigan Circuit Court and convicted on May 15, 1998. The petitioner's convictions arise from the shooting of Darryl Lee

following a dispute between Lee and the petitioner's friend, Angela Hughes. The Michigan Court of Appeals described the incident as follows:

> On September 6, 1997, Daryl Lee was at work roofing a house. When Lee left for work, he took with him keys and money belonging to his girlfriend, Angela Hughes. Hughes contacted defendant, requesting a ride to the location where Lee was working in order to retrieve the items from Lee. Upon arriving at the house where Lee was working, Hughes asked Lee for her keys and money. Lee denied having the items, and Hughes indicated that she, defendant, and two other people who were with them should leave. When they returned to defendant's car, defendant removed a shotgun from the trunk, returned to the house where Lee was working, and shot Lee. Lee died as a result of multiple gunshot wounds.

*People v. Brantley*, No. 213407, slip op. at 1 (Mich. Ct. App. June 27, 2000) (per curiam). The evidence at trial suggested that Hughes tried to stop the petitioner as he walked up to the house. Then, when the homeowner tried to keep the petitioner from entering the enclosed porch, the petitioner put the gun to her chest and threatened her. Medical evidence indicated that the victim was shot once in the legs at a distance of several feet, a wound that would have disabled him, and shot once in the face with the barrel of the shotgun pressed against his face.

The petitioner testified on his own behalf. He claimed that the loaded 12-gauge shotgun had been in the trunk of his car because his mother, with whom he was living, had seen it the day before and told him to get it out of the house. The petitioner testified that Hughes told him on the phone before the incident that Lee had taken her keys and money after a fight in which Lee had hit her and Hughes's daughter had been knocked down the stairs. The petitioner said that after he drove Hughes to the house where Lee was working, Hughes and Lee engaged in a heated argument. Then, the petitioner claimed, Hughes told the petitioner

> that if she had her heater – I mean, gun, she said he wouldn't be acting childish with her. Then I asked her if she could handle a shotgun, and . . . she said, no. She say, he ain't gonna' act childish with you. You know, you go get my keys and my money back.

Trial Tr., 5/13/1998, at 120. The petitioner testified that he then got his shotgun out of the car to confront Lee.

Hughes had testified earlier in the trial that she did not argue with Lee and simply told the petitioner that they should leave when Lee failed to return her money or her keys. The petitioner testified that this was untrue.

Louise Williams, the elderly owner of the house Lee was roofing, was standing in the doorway of her enclosed porch when the petitioner walked up, shotgun in hand, to confront Lee. Williams had testified that she tried to keep the petitioner out by holding the porch door closed when he pulled on it, but the petitioner threatened to shoot her if she did not get out of his way and touched the barrel of his shotgun to her chest. The petitioner denied that he ever threatened Williams, either verbally or with his shotgun.

None of the witnesses saw the shooting that followed. A number of witnesses heard the gunshots, and one witness saw the petitioner and the victim "scuffling" with the gun and the petitioner aiming the gun at the victim just prior to the first shot. The petitioner testified that he asked Lee for Hughes's keys and money, but Lee refused, charged at him, and grabbed the shotgun. The petitioner claimed that he fired the shotgun at the floor to try to get Lee to let go of it. Although the petitioner claimed that he shot at the floor, the forensic evidence established that he shot Lee in both legs below the knees, from a distance of between four and eight feet – too far for Lee to have reached and grabbed the gun barrel as the petitioner claimed.

After Lee was hit with the first blast, the petitioner claimed, Lee approached him trying to strike the petitioner with his fist and take the gun from him. The petitioner testified that the gun discharged for the second time when Lee grabbed the gun barrel and yanked it towards himself. The

forensic evidence suggested that Lee would have been disabled after receiving a shotgun blast to the legs just below the knees, and the gun barrel was in contact with Lee's jaw and mouth when it was fired the second time, causing Lee's death.

As noted earlier, the petitioner was convicted of murder, assault, and a weapon offense. He was sentenced on June 10, 1998. On appeal, the petitioner raised the following claims:

> I. Defendant is entitled to a new trial where the trial court failed to *sua sponte* instruct the jury regarding the cognate lesser offense of involuntary manslaughter (gross negligence); alternatively, defendant was denied the effective assistance of trial counsel where defense counsel failed to request an instruction on involuntary manslaughter (gross negligence).
>
> II. Defendant was denied his rights to due process and a fair trial as a result of the prosecutor's misconduct.
>
> III. Defendant's conviction for first-degree murder must be reduced to second-degree murder because there was insufficient evidence of premeditation and deliberation.

The Michigan Court of Appeals affirmed the petitioner's convictions. *People v. Brantley*, Docket No. 213407 (Mich. Ct. App. June 27, 2000) (per curiam).

The petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same issues presented to the Michigan Court of Appeals. That court denied the petitioner's application for leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Brantley*, 463 Mich. 972, 623 N.W.2d 597 (2001).

The petitioner filed the instant habeas petition in February 2002, raising the following grounds for relief:

> I. Insufficient evidence of premeditation and deliberation supports the petitioner's conviction for first-degree premeditated murder.
>
> II. The petitioner was denied his rights to due process and a fair trial as a result of the prosecutor's misconduct.

> III.   The petitioner was denied a fair trial when defense counsel failed to request and the trial court failed to *sua sponte* give the jury instructions on involuntary (gross negligence) manslaughter.

The respondent has answered the petition and contends that the petitioner's grounds for relief lack merit or are procedurally defaulted.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21

(quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner contends that the evidence presented at trial was insufficient to sustain his convictions. He asserts that the prosecution did not present sufficient evidence of premeditation and deliberation. The respondent replies that this claim has no merit. The Michigan Court of Appeals denied this claim, stating:

> In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the elements of the crime were proven beyond a reasonable doubt. *People v. Fetterley*, 229 Mich. App. 511, 515; 583 N.W.2d 199 (1998).
>
> First-degree premeditated murder requires that the prosecution "prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Anderson*, 209 Mich. App. 527, 537; 531 N.W.2d 780 (1995). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *Id.* "Though not exclusive, factors that may be considered to establish premeditation include the following: (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *People v. Plummer*, 229 Mich. App. 293, 300; 581 N.W.2d 753 (1998). Premeditation and deliberation can be inferred from the facts and circumstances, provided the inferences are supported by the record and not based on mere speculation. *Id.* at 300-301.
>
> Viewed in a light most favorable to the prosecution, the evidence showed that defendant took a shotgun from the truck of his vehicle and crossed the street to the enclosed porch where the victim was sitting. Hughes pulled on defendant and stood in front of him in an attempt to block defendant'[s] access to the victim, but defendant pushed her aside. When defendant arrived at the door to the enclosed porch, the homeowner was on the other side of the door holding the handle of the

>door. Defendant pulled on the door, and when the homeowner would not let him enter, defendant asked, "Do you want me to shoot you too?" Once defendant was on the porch with the victim, he aimed the gun at him. Medical testimony established that the first shot to the victim's legs disabled him and the second shot occurred with the barrel of the shotgun touching the victim's face. Given these facts, we conclude that the evidence was sufficient to allow a rational trier of fact to conclude that the shooting was premeditated and deliberate.

*People v. Brantley*, slip op. at 2-3.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16. A habeas court must defer to the factfinder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). The standard of review of the evidence articulated by the state appellate court is the exact standard established by the Supreme Court in *Jackson*. The decision, therefore, is not contrary to federal law.

Applying that standard, the Court concludes that sufficient evidence of the petitioner's guilt was presented to the jury. Several witnesses, including the petitioner, testified that the petitioner left the porch with Hughes and the others after Lee refused to give Hughes her keys and money. The

evidence presented at trial suggested that the petitioner then crossed the street, went to his car, opened the trunk of his car and took out the loaded 12-gauge shotgun that he knew was there. He then crossed the street again, pushed Hughes aside as she tried to stop him from entering Williams's porch, and forced his way into Williams's enclosed porch after touching the gun barrel to her chest and threatening to shoot her if she did not get out of the way. The trial evidence allowed the jury to conclude that the petitioner confronted and shot Lee first in the lower legs from a distance of about four to eight feet, then placed the barrel of his shotgun against Lee's jaw and killed him with a second blast to the face and neck. It was undisputed that Lee was unarmed.

The petitioner claimed that he shot Lee in the face accidentally after Lee rushed him, tried to punch him with his fist, and grabbed the shotgun barrel, pulling it towards himself while the petitioner pulled the gun the other way with his finger on the trigger. However, the petitioner's version of the shooting was somewhat contradicted by the physical evidence, which showed blood spatters several feet from the door where the petitioner said he was standing when he accidentally shot the victim in the face. The jury was free to accept the State's construction of the evidence or to disbelieve the petitioner's version of the shooting. Either would have been a rational choice on this record.

However, viewed in the light most favorable to the prosecution, the evidence showed that the petitioner had ample time to subject his actions to a "second look" between leaving Williams's porch with Hughes and the others and returning with the gun to the house where he shot Lee. He also had time to deliberate his decision to fire the second blast into Lee's face. *See People v. Morrin*, 31 Mich. App. 301, 328-30, 187 N.W.2d 434, 449 (1971) (cited with approval in *People v. Gonzalez*, 468 Mich. 636, 641, 664 N.W.2d 159, 163 (2003)). Although it took only a few

minutes for the petitioner to leave Williams's porch with Hughes and the others, go to his car, retrieve the shotgun, return to the porch, force his way past Hughes and Williams, and then finally shoot Lee twice, this lapse of time was sufficient to permit a jury to find premeditation and deliberation. *See People v. Glover*, 154 Mich. App. 22, 29, 397 N.W.2d 199, 203 (Mich. Ct. App. 1986) (delay of only a few seconds between the end of an argument and defendant's decision to renew violence and shoot the victim was sufficient to create a jury question on premeditation).

This Court concludes that the state court of appeals' decision denying the petitioner's sufficiency of the evidence claim is a reasonable application of federal constitutional law and a reasonable application of the law to the facts as presented to the court.

B.

The petitioner next contends that he was denied a fair trial because the prosecutor called him a "liar" and stated that his story was a "lie." The respondent contends that this claim is procedurally defaulted because the petitioner did not object when the prosecutor made these statements. The Michigan Court of Appeals determined that the petitioner defaulted on this prosecutorial misconduct claim when he failed to object to the statements at trial, but proceeded to evaluate the statements under a "manifest injustice" standard of review:

> Defendant also argues that he was denied a fair trial by the prosecutor's comment that defendant was a liar. Because defendant did not object at trial to the comment, review is precluded unless the prejudicial effect of the misconduct could not have been cured by a cautionary instruction or manifest injustice would result by not considering the issue. *People v. Truong (After Remand)*, 218 Mich. App 325, 336; 553 N.W.2d 692 (1996). Here, a cautionary instruction could have remedied any impropriety in the prosecutor's comment. Further, manifest injustice will not result from our failure to review the issue because the evidence of defendant's guilt was overwhelming. *People v. Weiss*, 235 Mich. App. 241, 247; 597 N.W.2d 215 (1999).

*People v. Brantley*, slip op. at 2. Although the respondent contends that this claim is procedurally defaulted, the Court need not address the procedural default issue because it concludes that the claim is without merit. *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

The petitioner argues that the prosecutor's remarks during closing arguments were improper because the prosecutor called him a "liar" and stated that he was lying in his testimony at trial. The prosecutor's remarks regarding the petitioner's testimony were given in the context of the prosecutor's exhortation to the jury to compare the testimony of the witnesses to each other and the rest of the evidence. He stated:

> And Jessie Brantley's statement, his version is not consistent with that evidence. His version is a lie. It is a lie to try and take responsibility away from himself. It is a lie for sympathy. It is a lie, his cry for mercy to say please don't find me guilty of first[-] ] degree murder. In this case, the evidence proves it is first-degree murder.

Trial Tr., 5/14/1998, at 9. The prosecution also referred to the petitioner as a "liar" and his testimony as "lies" in other isolated instances in his jury speech in which he compared the petitioner's story to specific testimony or evidence.

Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-46 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on

"the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Sixth Circuit has prescribed four factors to consider when analyzing such claims: (1) the likelihood that the statements would prejudice the defendant or mislead the jury; (2) whether the remarks were isolated or part of a pattern; (3) whether the prosecutor's statements "were deliberately or accidentally presented to the jury"; and (4) whether the other evidence against the defendant was substantial. *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000) (citing *United States v. Carroll*, 26 F.3d 1380, 1385-87 (6th Cir. 1994)). A prosecutor may not "express a personal belief or opinion in the truth or falsity of any testimony."

Because the petitioner testified in his own defense, the prosecutor was entitled to argue that the petitioner's testimony was not credible and to emphasize discrepancies in the evidence, although the prosecutor was not allowed to express a personal opinion as to the witness's credibility. *See United States v. Francis*, 170 F.3d 546, 552 (6th Cir. 1999). The prosecutor's remarks were proper in the context of his extensive argument that the petitioner's testimony did not align with the testimony of other witnesses or the physical evidence. Although the determination whether a witness is lying belongs to the jury, an advocate certainly may argue a view of how the jury should resolve that dispute, provided that the argument is grounded in the record evidence. That is all the prosecutor did here. Likewise, having an interest in the outcome of the case or having something to gain or lose from testimony are classic ingredients of bias that commonly are used to impeach witness testimony. When the petitioner testified at trial, he put his credibility in issue like any other witness. His bias was fair territory for the prosecutor's exploration. Furthermore, because the prosecutor's argument complimented the jury instruction explaining to the jury one of the factors

they should consider as they evaluate the credibility of each witness, the remarks were not likely to mislead the jury.

The prosecutor made comments about the petitioner's veracity in order to show disparities between his testimony and the other evidence introduced at trial. Given that the petitioner's defense consisted almost entirely of his testimony, it is logical that the prosecution would wish to cast doubt on the truthfulness of that testimony and compare it to the other evidence. Because these comments draw conclusions from evidence that previously had been presented at trial, these comments were not improper. The prosecutor's references to the petitioner as a liar and his version of the shooting as a lie did not infect the petitioner's trial with unfairness so "as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643. Therefore, the petitioner was not deprived of due process as a result of the prosecutor's remarks.

C.

Finally, the petitioner contends that he was denied a fair trial when the trial judge did not instruct the jury on involuntary manslaughter involving gross negligence. He also asserts that he was denied the effective assistance of counsel when trial counsel failed to request this instruction.

The Michigan Court of Appeals denied this claim on the grounds that the petitioner failed to request this instruction at trial and the omission of the error was harmless:

> Defendant argues that the trial court's failure to sua sponte instruct the jury regarding involuntary manslaughter (gross negligence) denied defendant his due process rights. We disagree. Appellate review of a claim of error from the failure to provide a jury instruction is waived unless the party requested the instruction at trial or a miscarriage of justice would result from failure to consider the issue. *People v. Messenger*, 221 Mich. App. 171, 177; 561 N.W.2d 463 (1997). After a thorough review of the record, we conclude that a miscarriage of justice will not result from our failure to review the issue. The omission of a requested instruction is harmless where the jury was instructed on an intermediate charge, but found the defendant guilty of the greater charge. *People v. Beach*, 429 Mich. 450, 490-491; 418 N.W.2d

> 861 (1988). In this case, the jury was instructed on the offenses of second-degree murder, voluntary manslaughter, and involuntary manslaughter-firearm intentionally aimed. Defendant was found guilty of the greater charge of first-degree premeditated murder. Therefore, even if defendant had requested an instruction on involuntary manslaughter that the trial court erroneously failed to provide, the error would have been harmless.
>
> Defendant argues in the alternate that defense counsel was ineffective for failing to request the instruction on involuntary manslaughter. Because we have concluded that omission of the instruction was harmless, defendant can demonstrate no prejudice as a result of counsel's failure to request the instruction. *People v. Pickens*, 446 Mich. 298, 312, 314; 521 N.W.2d 797 (1994).

*People v. Brantley*, slip op. at 1-2. The respondent does not raise the doctrine of procedural default as a defense to this claim, and the Court will not raise the defense *sua sponte* in this case. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Accordingly, the Court will address the merits of the petitioner's claim.

The petitioner argues that he was deprived of due process because an instruction on involuntary manslaughter for gross negligence would have been more consistent with his trial testimony. Looking to Supreme Court precedent, the Sixth Circuit has held that

> a defendant in a criminal trial has the right to "a meaningful opportunity to present a complete defense." A necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions.

*Taylor v. Withrow*, 288 F.3d 846, 851-52 (6th Cir. 2002) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (additional citations omitted). "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988); *see also*

*Newton v. Million*, 349 F.3d 873, 878 (2003). However, a defendant does not possess "the right to offer any defense, nor to demand [that] a jury be instructed on any theory." *Taylor*, 288 F.3d at 853.

A slightly different feature of due process, as explicated by the Supreme Court, suggests that the petitioner did not have an express constitutional right to a jury instruction on a lesser-included offense. The Supreme Court has declined to decide whether the Due Process Clause requires state courts to give jury instructions on lesser-included offenses in non-capital cases. *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980) (holding that the death penalty may not be imposed for a capital offense if the jury was not permitted to consider a verdict on a lesser included non-capital offense that would have been supported by the evidence). Although in *Hopper v. Evans*, 456 U.S. 605, 611 (1982), the Court ruled that a capital defendant is entitled to a lesser-included offense instruction when there is evidence to support it, more recently the Supreme Court held that state courts are not constitutionally required to instruct juries in capital cases on crimes that are not lesser-included offenses of the charged crime. *Hopkins v. Reeves*, 524 U.S. 88, 90-91 (1998).

The United States Court of Appeals for the Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc)); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003). In *Scott v. Elo*, the Sixth Circuit held that a Michigan habeas petitioner who had been convicted of first-degree murder was not entitled to a lesser-included offense instruction because a petitioner does not have a constitutional right to a jury instruction on a lesser-included offense in non-capital cases. *Scott*, 302 F.3d at 606. Even in capital

cases, there is no constitutional right to a jury instruction if the requested charge does not satisfy the legal definition of a lesser-included offense. *See Hopkins*, 524 U.S. at 90-91.

There are, no doubt, some cases in which the failure to give a properly requested instruction informing the jury of the possibility of guilt of a lesser included offense may deprive the defendant of the right to present a defense. Enforcing state law rules under such circumstances could result in the denial of constitutional rights. *Cf. Rock v. Arkansas*, 483 U.S. 44 (1987); *Chambers v. Mississippi*, 410 U.S. 284 (1973). The petitioner has not presented such a case here on the present record, however. As the state court of appeals noted, the petitioner's jury was instructed on a number of lesser-included offenses, in particular second-degree murder, voluntary manslaughter, and involuntary manslaughter-firearm intentionally aimed. The jury determined that the petitioner had committed first-degree murder, that is, the jury found that the petitioner killed the victim intentionally with premeditation and deliberation. Consequently, had the involuntary manslaughter-gross negligence instruction been given, it is likely that the petitioner still would not have been convicted of this lesser crime.

Therefore, the state court ruling that any error in failing to request or obtain this instruction was harmless is objectively reasonable and the petitioner is not entitled to habeas relief on this ground.

Not does the petitioner's related ineffective assistance of counsel claim have merit. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense.

*Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

Although both elements of the test must be satisfied before a constitutional violation can be found, a court need not analyze the competence element if the petitioner fails to show prejudice. *See Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004). In this case, the petitioner has failed to show prejudice because there is no reasonable probability that the outcome of the petitioner's trial would have been different if the involuntary manslaughter involving gross negligence instruction had been given. As explained above, the jury rejected an involuntary manslaughter theory of the case and found that the petitioner killed the victim deliberately and with premeditation.

Consequently, the petitioner is not entitled to habeas relief on the basis of his jury instruction claim or his related ineffective assistance of counsel claim.

III.

The Court concludes that the petitioner's claims are without merit. The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 4, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 4, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS